SAVANNAH, THUNDERBOLT & ISLE OF HOPE RY. *v.* BEASLEY.

1. Where the court read to the jury a request to charge, in the exact language in which it was written, and the counsel who had presented the request stated "that if he had so requested in writing, it was a clerical error, and proceeded to state the alleged error in the charge," and " the court, not comprehending or being able to understand the explanation, requested counsel, if he desired his written request modified, to reduce the modification to writing for the purpose of understanding it," which was not done, the failure of the court to comply with the oral request to modify the written charge was not error.

2. In charging the jury upon negligence, the court should not enumerate acts or omissions which are wholly outside of any degree of diligence which the law requires. An electric railway company is under no duty to stop its cars before reaching the crossings of public highways for the purpose of looking and listening by the motormen, or to enable them to look and listen, when there is no apparent reason for so doing. Under the facts of the present case, however, the erroneous charge on this subject, giving the jury credit for ordinary intelligence, could not have prejudiced the company.

3. The evidence warranted the verdict, and there was no error in denying a new trial.

July 16, 1894.

Action for damages. Before Judge MACDONELL. City court of Savannah. July term, 1893.

Jake Beasley sued the railroad company for personal injuries sustained by him from a collision of its electric car with a wagon he was driving, and obtained a verdict for $100. Defendant moved for a new trial on the general grounds, and upon those stated in the opinion; and the motion was overruled. The evidence on the question of negligence was directly conflicting. The collision occurred upon a public road crossing just out of Savannah, on a dark, rainy night in March, 1893, between seven and eight o'clock. Besides his own testimony, plaintiff introduced three other witnesses, one of whom was in the wagon with him; the other two were on the car. Their testimony tended to show, that the car ran rapidly against the wagon without the gong being sounded; that plaintiff and his companion looked and listened for a car before driving upon the railroad track, but neither saw nor heard one; that up to a short distance from the track the view was cut off by a high fence; that the force of the collision drove the wagon across the road, and plaintiff fell out of the wagon upon the platform of the car; that he was bruised and internally injured, suffered greatly and had been unable to work since the collision, etc. For defendant, there was testimony by the motorman and the conductor of the car, and by a passenger upon it, that it was running quite slowly and the gong was sounded as usual on approaching the crossing, and that the horse pulling the wagon was walking slowly toward the crossing, and seemed to be either stopped or about to stop to let the car pass; but on seeing that it did not, the motorman shut off the current, applied the brake tightly and reversed the car as rapidly as possible. There was scarcely any jar from the collision, and plaintiff was found at the side of the car by the front step, holding to the guard-rail of the dashboard. The car had a headlight. Nothing was left undone to avert the collision, etc.

SAUSSY & SAUSSY, for plaintiff in error.

MCALPIN & LAROCHE, *contra.*

SIMMONS, Justice.

1. Counsel for defendant requested the court to charge as follows: "If both the plaintiff and defendant are at fault, damages are to be diminished in proportion to the fault attributable to the plaintiff." When the judge reached the subject of contributory negligence, in his charge, he read this request to the jury as a part of his charge. Counsel for the defendant thereupon interrupted the judge and stated that if the request was written as read by the court, it was a clerical error, and that he desired the court to state the proviso in the law that recovery could be had provided the plaintiff, in the exercise of ordinary care, could not have avoided the consequences of defendant's negligence. The judge, in his certificate to the motion for a new trial, states that, not comprehending or being able to understand the explanation, he requested counsel, if he (counsel) desired his written request modified, to reduce the modification to writing so that it could be understood. Some volume of Georgia Reports was referred to, but no decision was read. The written modification of the request was never tendered, and the jury were permitted to retire.

The failure of the judge to comply with the oral request to modify the written charge was not error. When the court requested counsel to reduce the modification to writing, so that it could be understood, counsel should have complied with the request. The court is not bound to give in charge a request not made in writing, and clearly is not bound to give in charge oral modifications of a written request, especially where he has asked counsel to reduce the modification to writing and counsel has failed to do so. A request of this kind is sometimes calculated to confuse the judge, and it would not always

be safe to change or modify the written charge upon such a request, as the judge might misunderstand counsel or not fully comprehend the modification desired.

2, 3. A car upon the defendant's electric railway line, while crossing a public highway between Savannah and the town of Warsaw or Thunderbolt, came in collision with the plaintiff, who was driving his wagon across the highway; and this action was brought to recover damages for the injury thereby sustained. The judge, in charging the jury, instructed them that "the precise thing which every prudent man is bound to do before driving upon a railroad track, is that which every prudent man would do under like circumstances. If a prudent man would stop and look and listen, so must every one else, or take the consequences so for as the consequences may have been avoided by that reason or by that measure. In the same way, the precise thing which every motorman was bound to do before driving upon a crossing where vehicles are likely to be found crossing, if you believe this was such a crossing, is that which every prudent man would do under such circumstances. If a prudent man, under such circumstances, would stop his car, and would look and see and listen, or if he would go at a very low rate of speed, then the motorman would be bound to do whatever a prudent man would do under such circumstances, or else take the consequences so far as the consequences could have been avoided by that means." We think the latter part of this charge was erroneous, under the facts of this case. It puts a stricter rule of diligence upon street railway companies than the law imposes. Such a company is under no duty to stop its cars before reaching a public crossing, for the purpose of looking and listening, when there is no apparent reason for so doing. These companies are chartered for the benefit of the public; the public require rapid transit, and if a motorman driving one of these cars

v 94-10

were compelled to stop and look and listen for the approach of every wagon or buggy likely to cross the railway line, the public would be greatly inconvenienced and rapid transit would be rendered impracticable. The cars of this railway company had the superior right of way, and people who intend to cross its track should be careful to look and listen in order to avoid a collision with them. It is the duty of the motorman also to look and listen when approaching a public crossing, in order to avoid a collision with persons crossing, and due diligence would probably require him to ring his bell or give some signal of his approach to the crossing to put persons about to cross upon notice of his approach; but we do not think the law requires him to stop the car for that purpose, unless he sees that a collision cannot be avoided unless he does stop. On this subject see Booth on Street Railways, §304 *et seq.*, and cases cited; 4 Am. and Eng. Enc. of Law, Crossings, p. 951, par. 44, and note.

Under the facts of this case, however, giving the jury credit for ordinary intelligence, we do not think the erroneous charge on this subject could have prejudiced the defendant. The evidence fully warranted the verdict, and we do not feel constrained to grant a new trial for this error alone.          *Judgment affirmed.*