## ATLANTA RAILWAY AND POWER CO. *v.* BENNETT.

The instructions to the jury, of which complaint is made by the defendant company in its motion for a new trial, were not, for any of the reasons therein assigned, open to criticism ; and the evidence, though conflicting, fully warranted a finding in favor of the plaintiff.

Submitted May 1, — Decided July 18, 1902.

Action for damages.   Before Judge Calhoun.   City court of Atlanta.   December 23, 1901.

*Payne & Tye*, for plaintiff in error.   *Arnold & Arnold*, contra.

LUMPKIN, P. J.   An action for damages was brought by Bennett against the Atlanta Railway and Power Company.   His petition made a case substantially as follows: He was an employee of the company in the capacity of motorman.   On the 4th of October, 1900, while engaged in running one of its electric cars, it became necessary for him to absent himself therefrom in order to attend to a call of nature.   He left the car in charge of the conductor, by whose direction another motorman of the company, who happened to be riding upon this particular car, ran it to the end of the line and brought it back to the street at which the plaintiff had left it.   As the car approached the point where he was awaiting its return, the conductor and this motorman saw him coming towards the track for the purpose of boarding the car and resuming the discharge of his duties.   The car was " slowed up " to a perfectly safe rate of speed to enable the plaintiff to get upon the same, and he undertook to do so by stepping upon the " running-board " and grasping an upright post at the front of the car; but just as he was in the act of so doing, the motorman in charge " negligently and carelessly put on the full current of electricity, which caused the car to bound and jump forward very violently, and plaintiff was thrown from his position upon the running-board towards the front of the car, and rolled and fell partly on the track, but was partly thrown from the

track by the fender of the car, which rolled him around and enabled the front wheels to pass him. The motorman in the meantime had shut the current off and applied his brakes, and the car was continuing to move but slowing up in its forward motion when the back wheels of the car reached plaintiff, and in plaintiff's having been thrown around by the fender, and in his struggling to escape, his legs were caught by the back wheels and trucks and the apparatus which surrounded the same, and the car began to drag him. If the car had been stopped at this point, the plaintiff would still have been saved from the loss of his legs, . . but at this point the motorman, instead of continuing his hold on the brake, negligently and carelessly loosed the brake, and, the grade being descending, the car started violently forward when the brake was loosed and ran over plaintiff's legs, cutting off entirely the right leg just below the knee and mashing and ruining for life the left leg." There was a verdict for the plaintiff, and the defendant company is here excepting to a judgment overruling its motion for a new trial. This motion is based upon alleged errors in charging the jury, and upon the general grounds that the verdict was contrary to law and to the evidence.

One of the charges complained of was as follows: " The court charges you that if you believe the car was suddenly jerked through negligence of the motorman, and by the jerk [the plaintiff] was thrown off or jerked so as to lose his balance, and the injury was caused thereby, plaintiff would be entitled to recover, provided he could not have avoided the consequences to himself of defendant's negligence." The objections urged against this charge are, (1) that it contained an expression of opinion by the court to the effect that the act specified was " in law negligence per se"; and (2) that it failed to embrace an instruction that the plaintiff was not entitled to recover if, by the exercise of ordinary care, he could have avoided the consequences of the defendant's negligence. We do not think the charge is open to either of these criticisms. The court did not instruct the jury that any particular act or acts would amount to negligence, but simply informed them that if, "through the negligence of the motorman," the car was suddenly jerked forward so as to injure the plaintiff, he would be entitled to recover, "provided he could not have avoided the consequences to himself of defendant's negligence." The qualification embraced in the words last quoted

was really stronger against the plaintiff than was warranted, for it amounted to an instruction that the plaintiff could not recover if, in any way or by any means whatever, he could have avoided the consequences of the defendant's negligence ; whereas the true rule of law is that he was bound to exercise only ordinary care and prudence.

One of the printed rules of the company introduced in evidence provided that: "No person will be permitted to run the motor for any motorman upon any part of any route, without special permission being first obtained from the starter or superintendent. Should necessity require a motorman to leave a car upon any part of any route, he must take the controlling and reversing switch handles and leave the car in charge of the conductor." The superintendent of the company testified that its printed rules, including that just quoted, were promulgated by himself, and that this particular rule had been modified by him before the occurrence under investigation took place. His precise testimony in regard to this matter was: "These rules were issued under my authority. I make them and am responsible for those rules. It is my promulgation to these men. In a case of necessity, they have been so modified as to allow them to leave the car with the conductor. There is no rule covering that, but I have modified the practice. On the question, in a case of necessity, to allow the motormen to leave car in charge of the conductor, I had that modification at this time. If a man is called off by any call of necessity, under [my] modification of the practice, he could leave the car and its motive power with the conductor, controller and all." In charging upon this branch of the case, the court instructed the jury as follows: "If you believe that the Atlanta Railway and Power Company had a rule of the company, and that rule was promulgated to Bennett, that no motorman shall leave his car in the hands of another motorman or another person without the consent of the superintendent or starter, and that Bennett did leave his car in the hands of another motorman without the consent of the superintendent or starter, and he afterwards was hurt while attempting to board the car while it was controlled by said motorman, he can not recover, and you should find against Bennett and for the Atlanta Railway and Power Company. If you find that Bennett wished to get from his car to attend a call of nature, and was allowed to do so by the express consent of the con-

ductor, then this rule would not apply." The errors assigned upon this charge are, (1) that it did not correctly state the rule of the company relied on as a defense, and (2) that the effect of the last sentence of this charge was to abrogate the rule and make the same non-effective, irrespective of the question whether or not the company had, by acquiescence in the frequent practice of violating it, "so treated the rule as to make it not binding." The first of these exceptions is obviously not well taken, for the court did accurately state to the jury the substance of the rule just mentioned. Nor is there any merit in the second objection relied on. Indeed, the language used by the judge in that portion of his charge to which this exception relates worked a hardship upon the plaintiff; for, according to the undisputed testimony of the superintendent of the company, the plaintiff had a right, under the rule as modified, to leave the car for a necessary purpose, without taking with him the "controlling and reversing switch handles," whether the conductor assented thereto or not. That is to say, "the express consent of the conductor" was not, as his honor below instructed the jury, necessary in order to justify the plaintiff in leaving the car, as he did, in charge of the conductor, — "controller and all."

With regard to the general grounds of the motion, it is only necessary to say that there was ample evidence to support the verdict. There was, it is true, much conflict in the testimony as to material issues; but giving full credit to the testimony of the plaintiff himself, which it was the right of the jury to do, they were authorized to find that he, while in the exercise of proper care, was injured in the manner set forth in his petition.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*