29458. WHARTON *v.* THE STATE.

DECIDED JULY 8, 1942.

W. R. Knight, Wallace E. Harrell, for plaintiff in error.
William H. Long, solicitor, contra.

BROYLES, C. J. P. A. Wharton was charged in an accusation with selling intoxicating liquors in Brooks County, Georgia, a "dry county." The defendant filed a timely written plea in bar in which he alleged that the accusation failed to set out any offense under the laws of Georgia for the reason that said county was not a dry county. A jury was selected to try the issue raised. The plea reads as follows: "Now comes P. A. Wharton, the defendant named in the above stated case, before arraignment, and prior to entering a plea thereto, files this his plea in bar to said accusation and says that said accusation fails and omits to allege any offense under the laws of Georgia for the following reasons, to wit: 1. That said accusation charges this defendant with the commission of a misdemeanor in said county on the 17th day of September, 1941, for that he did 'sell and barter, for a valuable consideration, alcoholic, spirituous, malt, and intoxicating liquors, intoxicating bitters, and drinks, which if drunk to excess will produce intoxication,' in Brooks County, a dry county. 2. Your defendant shows that heretofore, to wit, on the 23rd day of March, 1938, upon a petition signed by at least 35 per cent. of the registered qualified voters qualified to vote at the general election immediately preceding the presentation, the ordinary of Brooks County, Georgia, called a special election to be held on the 14th day of April, 1938, which date was within thirty days from the filing of said petition, and caused notice of such call to be published in the official gazette of said county for two weeks preceding the election. 3. That such election was called by said ordinary and held under the provisions of the Act of the General Assembly of Georgia known as the 'revenue act to legalize and control alcoholic beverages and liquors' (Georgia Laws, 1937-1938, Extra Session, pages 103-124) and more particularly section 4 thereof, and at said time and place there was submitted to the qualified voters of said county the question of whether the manufacture, sale and distribution of alcoholic beverages and liquors should be permitted or prohibited. 4. That at said election 319 qualified voters cast their ballot 'for taxing and legalizing and controlling alcoholic beverages and liquors' and 217 qual-

ified voters cast their ballot 'against taxing, legalizing and controlling alcoholic beverages and liquors,' and thereupon the ordinary of said county, within three days from said election, declared that the majority of votes cast to be in favor of taxing and controlling alcoholic beverages and liquors and in favor of the manufacture, possession, distribution, and sale of such alcoholic beverages and liquors in accordance with the provision of said act at the expiration of fifteen days from the declaration of said result. 5. That following the submission of the question of legalizing and controlling alcoholic beverages and liquors to the voters of said county, there was duly authorized by the local authorities and the State Revenue Commission of Georgia, various persons, to engage in the retail sale and distribution of alcoholic liquors and paid the licenses as required by the governing authorities in said county and State. 6. Thereafter on the 24th day of June, 1940, another petition was presented to the ordinary of said county, likewise signed by 35 per cent. or more of the qualified voters of said county under the provisions of section 4 of the act of the General Assembly of Georgia, Georgia Laws 1937-1938, Extra Session, page 105, et seq., petitioning the ordinary to call another election and submit to the qualified voters of said county the question whether or not Brooks County would continue to legalize and control the sale of alcoholic beverages and liquors or nullify the previous election and prohibit the possession, sale, and distribution of alcoholic beverages and liquors. 7. That upon the presentation of said petition said ordinary did call another election in said county to be held on the 17th day of July, 1940, and at said time and place the question was again presented to the qualified voters of said county as to whether or not they were for or against taxing and legalizing and controlling alcoholic beverages and liquors in said county. That 232 votes were cast in the affirmative and 832 votes were cast in the negative at said election, and thereupon the ordinary declared that a majority of the qualified voters having voted against the taxing and legalizing alcoholic beverages and liquors, that henceforth the possession, sale, and distribution of alcoholic beverages and liquors were prohibited in said county and that all licenses be revoked and no further licenses be issued. 8. This defendant further shows that the last above-mentioned special election was null and void and without any authority of law for the following

reasons, to wit: (A) That the act of the General Assembly of Georgia as contained in Georgia Laws, Extra Session, 1937-1938, and section 4 thereof, page 105, et seq., made no provision for the call of another election after one election had been held and a majority of votes cast were in favor of taxing and controlling and legalizing the manufacture, possession, sale, and distribution of intoxicating liquors and beverages, and a declaration made by the ordinary of said county permitting such possession, sale and distribution. (B) That at the time of the last special election, held on the 17th day of July, 1940, the ordinary of Brooks County, Georgia, had no authority and was without legal or lawful power to call any election for the purpose of submitting to the qualified voters of said county the question of whether or not Brooks County would continue to legalize the sale of alcoholic beverages or nullify the previous election resulting in a majority of the votes cast being in favor of such legalizing, controlling, and taxing alcoholic liquors and beverages. 9. That by reason of the foregoing facts the possession, sale, and distribution of tax-paid alcoholic beverages and liquors in Brooks County is not prohibited by law, and this defendant has not committed any crime as charged in the accusation, and said accusation does not charge the defendant with any crime under the law now in force in said county. Wherefore, defendant prays that the accusation be dismissed and that this plea in bar be sustained, and that he be discharged."

The State admitted as true all the allegations of fact contained in paragraphs 1 to 7, inclusive, of the plea, but denied the conclusions of defendant as set out in paragraph 8 of the plea. Paragraphs 1 to 7, inclusive, of the plea were admitted in evidence as an agreed statement of facts, and after argument of counsel the jury, on the direction of the court, returned a verdict against the plea. To the direction of the verdict the defendant excepted pendente lite, and assigned error thereon in his bill of exceptions. The question for determination on that assignment of error is, in effect, whether, under the revenue tax act to legalize and control alcoholic beverages and liquors (Ga. Laws 1937-1938, Ex. Sess., pp. 103-124), where the qualified voters of a "dry" county have voted intoxicating liquors back into the county, such voters of the county can, after the expiration of two years from the date of the declaration by the ordinary of the result of the previous election, legally

vate such liquors out of the county. And this question must be determined by the proper construction of said act, and especially of section 4 thereof.

It is true that the act made no specific provision for the call of a second election after one election had been held resulting in favor of taxing, controlling, and legalizing the manufacturing, possession, distribution, and sale of intoxicating liquors and beverages. However, in section 4 of the act, it is stated that "no ordinary shall call, nor shall any election provided for herein, be held within two years after the date of the declaration of the result by the ordinary of the previous election for such purpose under this act." It is well settled that in the construction of a statute the courts shall look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil, and the remedy. Code, § 102-102, par. 9. As regards the statute under consideration, the old law was the strict prohibition law applying to all counties in Georgia. The evil was that many counties were inflicted with "bootleggers" and "blind tigers," and that in those counties the public officials who had the duty of enforcing the law were often lax in the performance of that duty, and that laxness resulted in a wide and growing disrespect for all other laws. The General Assembly, recognizing the evil, sought to eradicate it by enacting the statute under consideration, thereby leaving to the voters of any county the right to determine whether that county should be "wet" or "dry."

The contention of the defendant, as set forth in his special plea, is, in effect, that it was the intention of the legislature in passing the act to provide that after a "dry" county had once been voted into the "wet" brigade, it could never again be voted back into the "dry" column, but must remain "wet" forever. In our opinion that construction of the statute is unreasonable and unthinkable. "Where the intention of the legislature is so inadequately or vaguely expressed that the court must resort to construction, it is proper to consider the results and consequences of any proposed construction, and the court will, if possible, place upon the statute a construction which will not result in injustice, oppression, hardship, or inconvenience, unreasonableness, prejudice to public interest, or absurd consequences, or conclusions not contemplated by the legislature." 59 C. J. 969-972, § 574. In *Gazan* v. *Heery,* 183 *Ga.* 30 (187 S.

E. 371), headnote 3 reads as follows: "In the construction of a statute a court may decline to give a legislative act such construction as will attribute to the General Assembly an intention to pass an act which is not reasonable, or as will defeat the purpose of the proposed legislation. In the exercise of this power a court may avoid a portion of the enactment and preserve the remainder."

In our opinion it was the intention of the legislature in passing the act in question to provide that the voters of any "dry" county should have the right to determine whether the county should remain dry or become wet; and that, regardless of how that election went, the voters should have an opportunity, after the expiration of two years, to again determine whether the county should be wet or dry. We think that the legislature in passing the act inadvertently omitted giving the voters that right. The fact that the legislature in 1941 (Ga. L. 1941, pp. 199-200) amended the above-referred to act of 1937-1938 by specifically authorizing such a second election does not show that the legislature in passing the act of 1937-1938 did not intend to provide for such a second election. As before stated, we think that the General Assembly in the act of 1937-1938 intended to include such a provision in that act but inadvertently left it out; and that when that omission was discovered, the General Assembly, in the act of 1941, "to make assurance doubly sure," provided *specifically* for such a second election. The cases cited in the brief of counsel for the accused are distinguished by their facts from this case. The court did not err in directing a verdict against the plea in bar.

The verdict was authorized by the evidence; and none of the special grounds of the motion for new trial shows cause for a reversal of the judgment.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*