## 39219.   UNDERWOOD v. ATLANTA & WEST POINT RAILROAD COMPANY.

Decided January, 25, 1962—Rehearing denied
February 14, 1962.

*Greene, Neely, Buckley & DeRieux, John D. Jones,* for plaintiff in error.

*Heyman, Abram, Young, Hicks .& Maloof, Herman Heyman,* contra.

HALL, Judge. ■ We turn first to the trial court's sustaining of the defendant's demurrers to allegations in the petition of provisions of an ordinance of the City of Atlanta (Code of the City of Atlanta, 1953, § 48.2) and of negligence per se based on defendant's violation thereof. The ordinance provides: "Sec. 48.2. Protection at grade crossings to be provided. It shall be the duty of every person operating trains across grade crossings in the City to *provide at each such grade crossing complete public safety* from danger from approaching trains for all persons using the streets at such crossings. For this purpose persons operating trains or having control of the tracks shall place and keep at each such grade crossing at all times a watchman or flagman, or shall install, operate and maintain standard automatic gates or signaling devices, *sufficient to protect the public fully from the danger of an approaching train* . . . sec. 48.3. Operation over unprotected grade crossings prohibited. No train shall be run across any grade crossing where adequate provision, as required by the preceding section has not been made for the protection of human life." (Emphasis supplied). By its demurrers the defendant questioned whether the ordinance is repugnant to the Constitution of the United States and the Constitution of the State of Georgia for the reasons discussed *infra.*

■ The defendant contends, first, that the ordinance makes the railroad company an insurer of the safety of others, contrary to general law which only requires railroads to exercise ordinary care.

The meaning of some of the language in the ordinance is not plain; it does not have an exact or concrete meaning. The language, therefore, needs interpretation. *Phillips v. State,* 15 Ga. 518, 520; *Carroll v. Ragsdale,* 192 Ga. 118, 120 (15 SE2d

210); *Oxford v. Carter*, 216 Ga. 821, 822 (120 SE2d 298). Indeed, the meaning the defendant ascribes to the ordinance is an interpretation—something other than the meaning necessarily derived from the words.

In determining the meaning of the ordinance, the court must be guided by recognized rules of statutory construction. An ordinance "intended to promote the public safety . . . should receive a reasonable and practical interpretation to that end." *Smeltzer v. Atlanta Coach Co.*, 44 Ga. App. 53, 56 (160 SE 665). "Statutes requiring safety provisions at crossings should be construed liberally and in such manner as to accomplish the legislative purpose of promoting safety . . . " 74 C.J.S. 1019, § 433; 50 Am. Jur. 420, § 395.

The phrase "provide at each such grade crossing complete public safety," and the requirement that the device provided shall be "sufficient to protect the public fully from the danger of an approaching train," must be given a reasonable and sensible construction, which will, if possible, carry out the intention of the legislative body, and render the statute valid. *Strickland v. State*, 137 Ga. 1, 11 (72 SE 260, 36 LRA (NS) 115, AC 1913B 323); *Cutsinger v. City of Atlanta*, 142 Ga. 555, 556 (83 SE 263, LRA 1915B 1097, AC 1916C 280); *Mathis v. Fulton Industrial Corp.*, 168 Ga. 719, 721 (149 SE 35); *Head v. Cigarette Sales Co.*, 188 Ga. 452, 460 (4 SE2d 203); *State of Georgia v. Camp*, 189 Ga. 209, 210 (6 SE2d 299); *Moore v. Robinson*, 206 Ga. 27, 40 (55 SE2d 711); *Lamons v. Yarbrough*, 206 Ga. 50, 58 (55 SE2d 551); *Wharton v. State*, 67 Ga. App. 545, 549 (21 SE2d 258).

"Safety"—defined in Webster's New International Dictionary as "freedom from danger"—and "protect" are not absolute but relative terms. If we should interpret "complete public safety" and "fully protect" as absolutes, we would have to say the ordinance places an impossible requirement on railroads. Danger to human life from approaching trains can have causes other than acts and omissions of the railroad and beyond the control of the railroad, e.g., the acts or omissions of the person endangered or of someone else who puts him in peril of a train. We must reject the impossible construction of the terms and give

them a reasonable meaning. "A statute is never to be understood as requiring an impossibility, if such a result can be avoided by any fair and reasonable construction." *Pope v. U. S. Fidelity &c. Co.,* 198 Ga. 304, 307 (31 SE2d 602); *Atlantic C. L. R. Co. v. State,* 135 Ga. 545, 561 (69 SE 725, 32 LRA (NS) 20); *Southern Ry. Co. v. Atlanta Sand &c. Co.,* 135 Ga. 35, 36 (68 SE 807).

We believe the legislative body intended in using "complete" and "fully" to emphasize that the ordinance affirms and gives force locally to the duty imposed on railroads by general law, to its full extent; and intended to prescribe definitely that within its jurisdiction the maintenance and operation of specified warning devices at grade crossings is necessary to a full and complete compliance with this legal duty.

The second sentence of the ordinance, stating that "for this purpose" the railroad shall do certain things, refers back to, qualifies, and makes specific the duty, mentioned in the first sentence, to provide complete public safety. The language italicized above in the second sentence requires that the warning device used shall be sufficient in kind, and shall be operated long enough before the train enters the crossing, to attract the attention of and enable persons exercising due care for their own safety to stop before entering the crossing.

We must gather the intention of the legislative body from the ordinance as a whole. *Erwin v. Moore,* 15 Ga. 361, 364; *Columbus Southern Ry. Co. v. Wright,* 89 Ga. 574, 597 (15 SE 293); *Williams v. Bear's Den, Inc.,* 214 Ga. 240, 242 (104 SE2d 230). Thus, we arrive at this conclusion. The intention of the legislative body was that railroads, as a part of their recognized duty to protect human life (or, said another way, included among the things that due care generally requires them to do, such as travel at a safe speed, keep a vigilant lookout, etc.), be required to do certain specific things at grade crossings, namely, to have in action at all times where there exists danger from an approaching train, a device giving the public sufficient warning, namely, a watchman or flagman, or standard automatic gates or signaling devices.

We do not agree that the ordinance makes the railroad com-

pany an insurer of the safety of others. It impresses us that the overall purpose of the ordinance is "the protection of human life." We know of no statute (except statutes dealing with certain employment relationships) or rule of common law, that, in the absence of a contract, makes one person the insurer of the safety of another. There are some transactions, of course, in which one person is by law the insurer of another's property. We are confident that the legislative body of Atlanta did not intend to depart from the general principle that there must be fault causing injury to render one liable for injury to the life or limb of another, and this ordinance need not be construed to render a railroad liable thereunder except for failure to perform the acts that we have construed this ordinance to require. Statutes are "to be construed in connection and in harmony with the existing law." *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 700-701 (10 SE2d 375); *Candler v. Smith*, 50 Ga. App. 667, 673 (179 SE 395); 82 C.J.S. 545, § 316.

We realize that, since the ordinance is pleaded and will be before the jury, an instruction by the court will be needed to enable the jury to apply it correctly. We hold that the ordinance does not impose on railroads a duty greater than the duty of ordinary care required by State law. It does require railroads at grade crossings within the City of Atlanta to have in action, always for a time long enough before a train enters a crossing to enable people to stop before the train reaches the crossing, a man or device giving plainly visible signals that are adequate to give warning that a train is approaching.

The defendant contends also that the ordinance requires of railroads something that is unreasonable, arbitrary and unnecessary. The authorities do not support this contention. Statutes requiring railroads to provide reasonable safety measures do not deny due process of law. Minneapolis &c. Railway Co. v. Beckwith, 129 U.S. 26 (9 SC 207, 32 LE 585); 44 Am. Jur. 368, § 153; 74 C. J. S. 1018, § 432; accord *Central R. & Bkg. Co. v. Brunswick & Western R. Co.*, 87 Ga. 386, 392 (13 SE 520). And it has been recognized in Georgia and elsewhere that a municipal ordinance requiring a watchman at street crossings is valid when reasonably applied. *Western &c. R. Co.*

*v. Young,* 81 Ga. 397, 417 (7 SE 912, 12 ASR 320); *City of Acworth v. Western &c. R. Co.,* 159 Ga. 610, 618 (126 SE 454); Gaines v. Tennessee Cent. Ry. Co., 175 Tenn. 389 (135 SW2d 441, 445). The ordinance as we construe it in this decision is not in conflict with the Fourteenth Amendment of the Constitution of the United States or with Art. I, Sec. I, Par. III of the Constitution of Georgia (*Code Ann.* § 2-103).

■ The defendant further contends that the ordinance is too vague, general, and indefinite to put the railroad on notice of the character of signal device that should be furnished by the railroad at a public crossing.

"In order that a statute may be held valid, the duty imposed by it must be prescribed in terms definite enough to serve as a guide to those who have the duty imposed upon them . . . In determining whether a statute is void for uncertainty, the statute should be considered as a whole." 50 Am. Jur. 486, § 472. Under the Georgia decisions applying this rule to statutory provisions attacked as invalid for uncertainty, we are of the opinion that the ordinance here questioned is not invalid on this ground. *Jackson v. Beavers,* 156 Ga. 71 (118 SE 751); *Villyard v. Regents of University System,* 204 Ga. 517, 523 (50 SE2d 313); *Teague v. Keith,* 214 Ga. 853 (108 SE2d 489); *Atlanta Coach Co. v. Curtis,* 42 Ga. App. 639 (157 SE 344); *Garmon v. Cassell,* 78 Ga. App. 730 (52 SE2d 631); *Gaines v. State,* 80 Ga. App. 512 (56 SE2d 772).

The trial court erred in sustaining the defendant's demurrers to the allegations in the petition setting out the provisions of the ordinance of the City of Atlanta and allegations of negligence per se based thereon.

■ The trial court sustained defendant's demurrers to the following allegations of the petition: "20(e) As a result of his injuries, petitioner is physically unable to perform accustomed assistance in the home in caring for his invalid wife who is a helpless paralytic, unable to move about or minister to herself as a normal person and this inability on petitioner's part causes him great mental distress." The grounds of the demurrers were that the allegations do not constitute a basis of damages recoverable by plaintiff; that they improperly attempt to plead

evidence; that the physical condition of plaintiff's wife is irrelevant to the issues in the case; and that the allegations have no proximate relation to the alleged breach of duty by defendant and are too remote to be the subject matter of recovery in this case.

In related assignments of error, on the overruling of Grounds 13 and 14 of his motion for new trial, the plaintiff contends that the trial court erroneously excluded evidence offered to show elements of his pain and suffering. The plaintiff proposed to prove by his own and his wife's testimony that before the accident he played with his five children and helped his wife look after them and did as much with them as she did; he helped his wife in and out of bed and to go to the bathroom, would come home during the day and put her in a wheelchair and take her outside to get sunshine and take her back in; that he would grab her if she fell; that he would roll her to the table; that since the accident he can do none of these things, is ill and indifferent with the children, can't stand to hear the baby cry and for the children to make a fuss.

■ Evidence or allegations as to the domestic circumstances of the plaintiff in an action for the recovery of damages for a personal injury are generally held to be improper for the reason that they are irrelevant and immaterial. *Central R. v. Moore*, 61 Ga. 151; 59 ALR2d 373-412. It is generally immaterial whether the plaintiff "had a wife, or a dozen children, or none", and evidence of such facts, standing alone, "could throw no light on the right of recovery, and could have no effect, except possibly to tend to prejudice the minds of the jury . . ." *Macon, Dublin &c. R. Co. v. Musgrove*, 145 Ga. 647, 648 (89 SE 767).

It is also "a familiar principle that when a physical injury has been sustained the person injured may recover for mental suffering caused by or growing out of his bodily hurt." *Brush Electric Light &c. Co. v. Simonsohn*, 107 Ga. 70 (32 SE 902); *Watson v. Augusta Brewing Co.*, 124 Ga. 121, 124 (52 SE 152, 1 LRA (NS) 1178, 110 ASR 157); *Rome Ry. &c. Co. v. Duke*, 26 Ga. App. 52 (105 SE 386); *Davis v. Murray*, 29 Ga. App. 120 (113 SE 827); *Atlanta Hub Co. v. Jones*, 47 Ga. App.

778 (171 SE 470); 1 Joyce on Damages 267, § 218. There appears to be a conflict among jurisdictions as to whether the mental distress caused by the impairment of *capacity to enjoy life,* resulting from a physical injury, is a proper element of damages. 15 (Supp.) Am. Jur. 81, § 187; 120 ALR 535-543; 38 Mich. L. Rev. 97; 13 So. Calif. L. Rev. 152. However, the right to recover for this variety of mental anguish appears to be recognized in Georgia as a proper element of pain and suffering. *Napier v. DuBose,* 45 Ga. App. 661 (5) (165 SE 773); 120 ALR 537 (mental distress resulting in being unable to sleep soundly at night or drive an automobile as before); *Watson v. Augusta Brewing Co.,* 124 Ga. 121, supra (mental anguish caused by dread after swallowing several pieces of glass); *Davis v. Murray,* 29 Ga. App. 120, supra (mental suffering on account of mortification and disappointment at the birth of a deformed child); *Western Union Tel. Co. v. Ford,* 8 Ga. App. 514, 518 (70 SE 65) (intangible or sentimental result of mental suffering). Accord, 2 Harper and James, The Law of Torts, 1032, 1321-1323, § 18.4, § 25.10; Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard L. Rev. 1035, 1048-1049. Such mental suffering is called "emotional distress" in the Restatement and recognized as a proper element of damages. Vol. I, Restatement of Torts, § 47 (b).

While the fact that the plaintiff had an invalid wife and five children, standing alone, does not constitute a basis of damages recoverable by the plaintiff, the plaintiff's mental distress resulting from his inability to care for his invalid wife and to care for and play with his five children, caused by or growing out of his bodily injury, was a proper element of damage—pain and suffering.

■ Defendant's demurrer on the ground that the above quoted allegations, of paragraph 20 (e), are an attempt to plead evidence is without merit. This pleading is not of the kind that has been held objectionable as evidentiary matter. *Martin v. Greer,* 31 Ga. App. 625 (121 SE 688); *Phipps Lumber Co. v. Albany Hdw. &c. Co.,* 42 Ga. App. 820 (157 SE 702). It was a proper allegation of ultimate facts which the pleader under-

takes to prove by evidence. *Tanner v. National Cas. Co.,*
214 Ga. 705, 707 (107 SE2d 182); *Anderson v. Alexander,* 179
Ga. 511, 513 (176 SE 367).

The court erred in sustaining defendant's demurrers to para-
graph 20 (e) of the petition and in overruling Grounds 13 and 14
of the motion for new trial.

■ We will next consider the assignment of error on the trial
court's overruling of plaintiff's demurrers to allegations of de-
fendant's answer that at the time of the collision plaintiff was
driving a taxicab for hire and carrying two passengers for hire;
and that plaintiff was negligent per se in failing to stop and do
the things required by the Georgia Law set forth in *Code Ann.*
§ 68-1663, which provides that the driver of a motor vehicle for
hire, before crossing the "tracks of a railroad, shall stop such
vehicle within 50 feet but not less than 15 feet from the nearest
rail of such railroad and while so stopped shall listen and look
in both directions along such track for any approaching train
. . . and shall not proceed until he can do so safely." The
grounds of plaintiff's demurrers were that the statute allegedly
violated was "intended for the sole protection of passengers for
hire in a motor vehicle being driven for hire and was not intended
to apply" to the defendant in this case, and that therefore the
allegations were irrelevant and prejudicial to plaintiff.

In Georgia and elsewhere, it has been long recognized that, be-
fore a party can invoke as negligence per se in his behalf the
violation of a statute requiring or prohibiting certain conduct,
it must appear that he is within the class for whose benefit the
statute was passed. *Platt v. Southern Photo Material Co.,*
4 Ga. App. 159, 164-166 (60 SE 1068); *Central of Georgia Ry.
Co. v. Griffin,* 35 Ga. App. 161, 164 (132 SE 255); *Huckabee v.
Grace,* 48 Ga. App. 621 (173 SE 744); *Etheridge v. Guest,* 63
Ga. App. 637, 640 (99 SE 37); *Grant v. McKiernan,* 82 Ga. App.
82 (60 SE2d 794); *Whitley Const. Co. v. Price,* 89 Ga. App.
352, 359 (79 SE2d 416). This principle is a manifestation of
the idea basic to negligence law, that negligence consists of the
failure to perform a duty *owed to someone. Huckabee v. Grace,*
supra, pp. 628, 629.

The principle applies when a defendant seeks to establish

negligence *per se* as a defense, based on the plaintiff's violation of a statutory duty. 2 Harper and James, The Law of Torts, 1004, § 17.6; Prosser on Torts, (1941 Ed.) 277, § 39; Vol. II, Restatement of Torts, 543, § 469. A violation by the plaintiff of a statute prohibiting acts which endangered him may be invoked as a defense in an action for negligence, provided the prohibition of the statute is intended to apply for the benefit of the defendant in the situation wherein the plaintiff was injured. Watts v. Montgomery Traction Co., 175 Ala. 102 (57 S 471); Town of Remington v. Hesler, 111 Ind. App. 404 (41 NE2d 657); 38 Am. Jur. 877, § 196; 65 C.J.S. 740, § 127.

The Georgia statute which the defendant seeks to invoke provides: "The driver of any motor vehicle carrying passengers for hire, or of any school bus carrying any school child, or of any vehicle carrying explosive substances or flammable liquids as a cargo or part of a cargo, before crossing at grade any track or tracks of a railroad, shall stop such vehicle within 50 feet but not less than 15 feet from the nearest rail of such railroad and while so stopped shall listen and look in both directions along such track for any approaching train, and for signals indicating the approach of a train, except as hereinafter provided, and shall not proceed until he can do so safely. . ." Ga. Laws 1953, Nov.-Dec. Sess., pp. 556, 594 (*Code Ann.* § 68-1663). Other sections of the statute require all vehicles to stop when there is an electric signal or flagman giving warning, a lowered gate, a train approaching in hazardous proximity, or a stop sign erected by State or local authorities in accordance with the statute. Ga. L. 1953, Nov.-Dec. Sess., pp. 556, 593-594 (*Code Ann.* §§ 68-1661, 68-1662).

The duty placed on the drivers of vehicles *carrying passengers for hire* is stricter than that placed on drivers of vehicles not mentioned in § 68-1663, and is even stricter than the duty placed on drivers of vehicles for hire when they are not carrying passengers for hire. Since the driver of a vehicle for hire is regulated by § 68-1663 only when he is carrying a passenger, and is left under the general regulation of § 68-1661 when he is not carrying a passenger, it appears that the duty imposed on the driver by § 68-1663 is for the protection of his passengers.

The defendant relies on Kline v. Pa. R. Co., 9 F2d 290, 292, as supporting its defense based on plaintiff's violation of the Georgia statute. The plaintiff in that case was a school bus driver, who allegedly violated an Ohio statute requiring him to stop before crossing railroad tracks and not to proceed until absolutely certain that no car or train was approaching from either direction. The court stated: ". . . This statute was obviously enacted in the interest of children traveling in school busses, and not for the protection of the driver. But it imposed a duty on the plaintiff, and if, in failing to perform it, he so contributed to the accident that, but for his failure, it would not have occurred, he cannot recover." This case does not hold that the school bus driver's violation was negligence as a matter of law but holds that this omission was evidence of negligence to be considered by the jury. Prosser on Torts (1941 Ed.) 278, § 39.

In a number of foreign jurisdictions, the violations of statutes identical or similar to *Code Ann.* § 68-1663, by drivers of trucks carrying flammable cargo or trucks of common carriers, have been held negligence per se, both when the violation was by the defendant sued (Essam v. New York, N. H. & H. R. Co., 140 Conn. 319, 99 A2d 138), and when the violation was by the plaintiff and relied on as a defense. Miller v. Chicago, R. I. & P. Ry. Co., 73 SD 180 (40 NW2d 324); Glendenning Motorways, Inc. v. Green Bay & W. R. Co., 256 Wis. 69 (39 NW2d 694); Shelby v. Southern Pac. Co., 68 Cal. App. 2d 594 (157 P2d 442); Schofield v. Northern Pac. Co., 13 Wash. 2d 18 (123 P2d 755); Chicago, B. and Q. R. Co. v. Ruan Transp. Corp., 171 F2d 781. These cases are distinguishable in that the duty placed on drivers of vehicles carrying flammable cargo is "intended to eliminate the consequences of disasters involving or likely to involve the public" rather than to protect passengers in the vehicles. Miller v. Chicago, R. I. & P. Ry. Co., supra.

In accord with the Georgia precedents cited above, we hold that the failure to comply with the provisions of *Code Ann.* § 68-1663, by the plaintiff driver of a vehicle for hire, while carrying a passenger for hire, was not negligence per se as to the defendant railroad.

The trial court erred therefore, in overruling plaintiff's de-

murrer No. 3 to defendant's answer and in overruling Grounds 6 and 12 of plaintiff's motion for new trial.

■ The question remains whether the statute has any relevance to the transaction in question so as to allow it to be pleaded. Though there is authority and logic for the contrary view, it seems to be settled in Georgia that the failure of a party to obey a statute that is related to or capable of having a causal connection with the transaction in dispute, is admissible in evidence and may be considered by the jury in passing on the question whether there was or was not negligence, though the violation of the statute would not of itself be negligence. *Atlanta &c. Ry. Co. v. Gravitt,* 93 Ga. 369, 409 (20 SE 550, 26 LRA 553, 44 ASR 145) ; *Atlanta, Knoxville &c. Ry. Co. v. Bryant,* 110 Ga. 247 (34 SE 350) ; *Macon &c. Ry. Co. v. Parker,* 127 Ga. 471, 475 (56 SE 616) ; *Southern Ry. Co. v. Wiley,* 9 Ga. App. 249, 250 (71 SE 11) ; *Georgia Southern &c. Ry. Co. v. Wilson,* 93 Ga. App. 94, 107 (91 SE2d 71) ; Note, 9 Ann. Cas. 427, 431; Anno. 66 ALR 811, 830; 38 Am. Jur. 834, § 162; 65 C.J.S. 423, § 19. Georgia being a negligence per se jurisdiction (rather than a jurisdiction where the rule is that a violation of a statute is merely evidence of negligence), the statute fixes the standard when the statutory purpose limitation is met, but is only evidence of the standard when that limitation is not met but the enactment is deemed relevant enough to be considered. 2 Harper and James, The Law of Torts, 1005, § 17.6, n. 38.

In some Georgia cases we find language indicating that, unless a statutory violation is negligence per se, it has no application at all. *Central of Georgia Ry. Co. v. Griffin,* 35 Ga. App. 161, 164, supra; *Huckabee v. Grace,* 48 Ga. App. 621, 630, supra; *Etheridge v. Guest,* 63 Ga. App. 637, 640, supra (statute not capable of having a causal connection with the injury inflicted). However, the *Gravitt* case and the cases cited and discussed therein are the controlling precedents that we must follow.

The overruling of plaintiff's demurrers Nos. 1 and 2 to defendant's answer, and the overruling of Grounds 4(a) and 5(a) of plaintiff's motion for new trial, were not error for the reasons assigned.

■ The trial court, on defendant's motion, quashed plaintiff's interrogatories seeking to discover whether or not the defendant had warning devices at other grade crossings, and, if not, why not; the types of its other warning systems in the city; and the cost of installing such systems at the Wylie Street Crossing. The court quashed the interrogatories on the ground that the information sought thereby was not relevant and would not be admissible in evidence. This action took place (order of Judge Claude D. Shaw dated November 17, 1958) prior to the adoption of the "Practice and Procedure—Depositions and Discovery" Act, approved March 25, 1959 (Ga. L. 1959, p. 425). " . . . As a general rule, evidence of other acts, even of a similar nature, of the party whose own act or conduct . . . is in question, [or] of other similar transactions with which he has been connected . . . is not competent to prove the commission of a particular act charged against him, unless the acts are connected in some special way, indicating a relevancy beyond mere similarity in certain particulars." 20 Am. Jur. 278, § 302. Georgia law is in accord. Georgia Code of 1933, § 38-202. "Generally, it may be said that it is not permissible, for the purpose of establishing whether a condition at one place is dangerous, to show conditions at places other than the one in question. . ." 20 Am. Jur. 286, § 307. Following this principle as applied in the cases cited below, we hold that the trial court's quashing of the interrogatories was not error. *Wright v. Central R. & Bkg. Co.,* 16 Ga. 38; *Sammons v. Webb,* 86 Ga. App. 382, 388 (71 SE2d 832); *Southern Ry. Co. v. O'Bryan,* 112 Ga. 127, 129 (37 SE 161); *Hight Accessory Place v. Lam,* 26 Ga. App. 163, 166 (105 SE 872); *Butler v. Central of Ga. Ry. Co.,* 41 Ga. App. 115, 119 (151 SE 834); *Bazemore v. Powell,* 54 Ga. App. 444, 445 (188 SE 282); *Atlantic C. L. R. Co. v. Thomas,* 83 Ga. App. 447 (64 SE2d 301); Stocker v. Boston & M. R., 83 N.H. 401 (143 A 68, 71).

■ Grounds 7 and 8 of plaintiff's motion for new trial complain of certain instructions given by the court, on the ground that they applied to both ordinary negligence and negligence per se, and were erroneous as to negligence per se.

The instruction complained of in Ground 7 was to the effect

that the jury should determine whether the defendant was negligent in the particulars charged from all the evidence, including "the time, the place, the circumstances and surroundings," etc.

We agree that this instruction would not correctly apply to negligence per se. As it stood in context with the other points in the charge, it applied only to ordinary negligence and was not erroneous.

The charge complained of in Ground 8 was that if the plaintiff "shows by the evidence that some one or some of said acts were the proximate cause of the injury complained of *and that the defendant was negligent therein,* then the plaintiff would be entitled to recover. . . ." (Emphasis supplied). This instruction was given between instructions explaining what was negligence per se and those explaining what was ordinary negligence. The words italicized above could be given interpretation that would make the instruction properly apply to ordinary negligence only, and it is not absolutely clear from the charge that the instruction was so restricted. We think it would be well for the court to emphasize it in some manner when an instruction applies only to one or the other class of negligence. Giving the jury credit for ordinary intelligence, however, we do not think either of these instructions as given was confusing and prejudicial to the plaintiff, and hence neither was reversible error. *Savannah, Thunderbolt ;&c. Ry. Co. v. Beasley,* 94 Ga. 142 (21 SE 285).

The trial court did not err in overruling Grounds 7 and 8 of the motion for new trial.

■ In Grounds 9 and 10 plaintiff complains of an instruction to the jury to the effect that, even if they found the railroad's failure to maintain a signaling or safety device to be negligent, such negligence should not be found to be the proximate cause of plaintiff's injuries if the plaintiff was familiar with the crossing and had knowledge that there was no safety device there. It is true that if plaintiff was familiar with the crossing and knew there was no safety device there, this knowledge would place upon plaintiff the duty to exercise ordinary care to avoid the consequences of defendant's negligence in not maintaining a safety device; and if the plaintiff failed to exercise such care he

could not recover. The instruction objected to was error because it equated knowledge of the condition at the crossing with negligence, or plaintiff's failure to exercise ordinary care; whereas knowledge of defendant's negligence is only a factor to be considered in determining whether or not the plaintiff was negligent. *Western &c. R. Co. v. Ferguson,* 113 Ga. 708, 711 (39 SE 306, 54 LRA 802); *Georgia Northern Ry. Co. v. Hathcock,* 93 Ga. App. 72, 83 (91 SE2d 145).

The trial court erred in overruling Grounds 9 and 10 of the motion for new trial.

■ The charge complained of in Ground 11 of plaintiff's motion for new trial involves the rule preventing plaintiff from recovering in the event he could by the exercise of ordinary care have avoided the consequences of defendant's negligence; the rule preventing the plaintiff from recovering in the event his own negligence was the sole cause of his injuries; and the rule permitting plaintiff to recover partially for his injuries in the event the negligence of both plaintiff and defendant contributed to causing plaintiff's injuries and the defendant's negligence was greater than plaintiff's (comparative negligence). These rules are derived from two different chapters of the Georgia Code. *Code Ann.* § 105-603: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." *Code Ann.* § 94-703: "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him." They are all applicable in a suit against a railroad (*Wrightsville &c. R. Co. v. Gornto,* 129 Ga. 204, 210, 58 SE 769), and constitute separate defenses. *Atlanta, Knoxville &c. Ry. Co. v. Gardner,* 122 Ga. 82, 94 (49 SE 818); *Whatley v. Henry,* 65 Ga. App. 668, 674 (16 SE2d 214). The decisions involving these rules have been somewhat confusing. *Willis v. Jones,*

89 Ga. App. 824 (81 SE2d 517). The charge complained of in this case was an attempt to combine all of these rules in one instruction to the jury. It contained an inaccuracy, as will be elaborated below, and could have been confusing to the jury. We hold that it was reversible error for the reasons stated below.

The court instructed that, in order for the plaintiff to be entitled to a reduced recovery in the event the plaintiff and defendant both were negligent, the jury must find that the plaintiff's negligence was "less than failure to exercise ordinary care." In our opinion this is not a correct statement of the law, though we find the following cases that appear to approve such a statement: *Central R. & Bkg. Co. v. Dixon*, 42 Ga. 326, 331; *Central of Ga. Ry. Co. v. McKenney*, 116 Ga. 13, 17 (42 SE 229) (where railroad had been guilty of *slight* negligence); *Rollestone v. Cassirer & Co.*, 3 Ga. App. 161, 174, 177 (59 SE 442); *Davies v. West Lumber Co.*, 32 Ga. App. 460, 461 (123 SE 757); *Brown v. Meikleham*, 34 Ga. App. 207, 209 (128 SE 918); *Hexter v. Burgess*, 52 Ga. App. 819, 823 (184 SE 769); *Berry v. Jowers*, 59 Ga. App. 24, 31 (200 SE 195). Only two of the above cases cite any precedents for the statement. *Brown v. Meikleham*, supra, cites *Central R. & Bkg. Co. v. Newman*, 94 Ga. 560 (21 SE 219); *Davies v. West Lumber Co.*, supra; and *Central of Georgia Ry. Co. v. Burton*, 33 Ga. App. 199, 202 (125 SE 868), none of which authoritatively supports the instruction complained of in the present case. *Central R. & Bkg. Co. v. Dixon*, supra, held that the plaintiff, who put himself "under the wheels of the cars, which he had every reason to expect would move, almost immediately," could not recover, even though there might have been some negligence, in failing to blow the whistle as usual before moving, on the part of the railroad. The court cited *Macon &c. R. Co. v. Johnson*, 38 Ga. 409, 433, and § 2921 (now § 105-603) of the Code, and in its opinion stated (p. 331). "If he [the plaintiff] be negligent, but the negligence does not amount to the want of ordinary care, then, if the railroad company be also negligent, the jury shall apportion the damages according to the negligence of both parties." The opinion indicates that the court applied (perhaps improperly, according to other cases) the "avoidance of consequences"

rule, and hence its statement as to the apportionment rule is dictum. In any event, *Macon &c. R. Co. v. Johnson,* supra; does not make the "apportionment of damages" rule applicable only when plaintiff's negligence "does not amount to the want of ordinary care." The opinion in that case states, (p. 432), "mere want of ordinary care, on the part of the plaintiff, will not relieve the defendant, unless he be totally free from fault." *Macon &c. R. Co. v. Johnson,* supra, is the controlling precedent, and the instruction presently attacked is in conflict with it. A like instruction was disapproved in *Willis v. Jones,* 89 Ga. App. 824, supra.

In the language of many cases the comparative negligence rule entitles the plaintiff to recover when "the plaintiff was less negligent than the defendant," or "the defendant was more negligent than the plaintiff," or "the defendant's negligence was of a greater degree" than the plaintiff's, e.g., *Rich's, Inc. v. Townsend,* 94 Ga. App. 761, 767 (96 SE2d 332); *Holtsinger v. Scarbrough,* 71 Ga. App. 318, 319 (30 SE2d 835); *Pollard v. Heard,* 53 Ga. App. 623, 626 (186 SE 894); *Baggett v. Jackson,* 79 Ga. App. 460, 466 (54 SE2d 146). Such language does not mean that the plaintiff can recover only if the plaintiff's negligence was "less than a failure to exercise ordinary care." The law is that ordinary negligence of the plaintiff "will not bar recovery where it precedes any duty on his part to discover and avoid the negligence of the defendant." *Conner v. Downs,* 94 Ga. App. 482, 487 (95 SE2d 393); *Macon &c. R. Co. v. Johnson,* 38 Ga. 409, supra; *Smith v. American Oil Co.,* 77 Ga. App. 463, 489, 490-491 (49 SE2d 90); *Fortenberry & Sons v. Malmberg,* 97 Ga. App. 162, 177 (102 SE2d 667); *Burton v. Brown,* 101 Ga. App. 527, 528 (114 SE2d 386); *Southern Ry. Co. v. Daniell,* 102 Ga. App. 414, 417 (116 SE2d 529).

Georgia at an early time abandoned the common law rule that if a plaintiff was negligent at all he was barred from recovery. For the common law rule Georgia substituted the comparative negligence rule, which changed plaintiff's duty to protect his own safety from an absolute duty to the duty to exercise ordinary care. *Macon &c. R. Co. v. Johnson,* 38 Ga. 409, supra. And under the

"avoidance of consequences" rule, the plaintiff is not required to exercise *more than* ordinary care to avoid the consequences of defendant's negligence. *Atlanta Ry. &c. Co. v. Bennett,* 115 Ga. 879, 880 (42 SE 244).

It has been held error to charge the "avoidance of consequences" rule (*Code* § 105-603) and in immediate connection therewith the "apportionment of damages" rule (§ 94-703 and the last sentence of § 105-603) in such manner as to qualify the former by the latter, and "'without making the proper explanation as to the class of cases to which this latter charge is applicable." *Americus, Preston &c. R. Co. v. Luckie,* 87 Ga. 6, 8 (13 SE 105); *Western &c. R. Co. v. Ferguson,* 113 Ga. 708, 711, supra; *Columbus R. Co. v. Peddy,* 120 Ga. 589, 590 (48 SE 149); *Macon Ry. &c. Co. v. Streyer,* 123 Ga. 279 (51 SE 342). Cases to which the apportionment rule is applicable are "cases where, by ordinary care, [the plaintiff] could not have avoided the consequences of defendant's negligence." *Macon &c. R. Co. v. Johnson,* 38 Ga. 409, 433, supra. In order to avoid confusion in the application of these complex rules, we are of the opinion that the court should present them to the jury separately. *Macon &c. R. Co. v. Holmes,* 103 Ga. 655, 658 (30 SE 563).

The problem presented here can best be explained by setting out the various steps that the jury must follow in the event they find that the defendant was negligent. They must first decide whether by the exercise of ordinary care the plaintiff could have avoided the consequences to himself of defendant's negligence. *Taylor v. Morgan,* 54 Ga. App. 426, 431-432 (188 SE 44); *Southern Stages v. Clements,* 71 Ga. App. 169, 175 (30 SE2d 429); *Atlanta, Knoxville &c. Ry. Co. v. Gardner,* 122 Ga. 82, supra. If they find that the plaintiff, after the negligence of the defendant was existing and was apparent to plaintiff, or plaintiff had reason to apprehend its existence, the plaintiff by the exercise of ordinary care could have avoided the consequences of the defendant's negligence, they must find a verdict for the defendant. *Western &c. R. Co. v. Ferguson,* 113 Ga. 708, supra; *Macon &c. Ry. Co. v. Holmes,* 103 Ga. 655, supra; *Comer v. Barfield,* 102 Ga. 485, 487 (31 SE 89). If

they find that the plaintiff could not by the exercise of ordinary care have avoided the consequences of defendant's negligence after it was apparent to him or he had reason to apprehend it, they must then consider the evidence further and decide whether the plaintiff was otherwise negligent. *Macon &c. R. Co. v. Johnson*, 38 Ga. 409, supra. If they find the plaintiff was negligent and that his own negligence was the sole cause of his injuries, they must find a verdict for the defendant. *Code Ann.* § 94-703; *Georgia R. & Bkg. Co. v. Auchinachie*, 142 Ga. 513 (83 SE 127); *Kirk v. Savannah Elec. &c. Co.*, 50 Ga. App. 468 (178 SE 470); *Whatley v. Henry*, 65 Ga. App. 668, 674, supra. If they find the plaintiff was negligent, and that neither plaintiff's negligence nor defendant's negligence was the sole proximate cause of plaintiff's injuries, but that plaintiff's negligence and defendant's negligence combined to cause plaintiff's injuries, and the defendant's negligence was greater than the plaintiff's, then they would find a verdict for the plaintiff in an amount calculated by determining the total amount in which plaintiff has been damaged, and then reducing that amount in proportion to the negligence of the plaintiff compared with that of the defendant. *Whatley v. Henry*, supra; *Central of Ga. Ry. Co. v. Larsen*, 19 Ga. App. 413, 417 (91 SE 517); *Carter v. Powell*, 57 Ga. App. 360, 370 (195 SE 466); *Baggett v. Jackson*, 79 Ga. App. 460, 466, supra.

The trial court erred in overruling Ground 11 of the motion for new trial.

*Judgment reversed as to orders discussed in Divisions 1, 2, 3, 7 and 8 of opinion. Judgment affirmed as to orders discussed in Divisions 4, 5 and 6 of opinion. Felton, C. J., and Bell, J., concur.*

### On Plaintiff's Motion for Rehearing

Hall, Judge. The plaintiff questions our holding that the failure to obey a statute may be considered by the jury, along with all the other facts of the case, as a circumstance in determining whether or not a party was negligent, even though the statutory violation would not of itself alone constitute negligence. In this holding we followed *Atlanta &c. Ry. Co. v. Gravitt*, 93 Ga. 369 (20 SE 550). The plaintiff contends that

*Holmes v. Central R. & Bkg. Co.,* 37 Ga. 593, holds to the contrary and, being the older decision, should be followed.

The *Gravitt* case, in Division 4 of the opinion, held that a violation of the blow-post law was not negligence *per se* as to a person walking upon a railway track on a trestle not at a public crossing. At pages 391 and 392 the opinion (Division 4) stated that the *Holmes* case was the "first distinct announcement" on the question, had not been overruled, was made by a full bench (3 Justices), and was still in force. The Supreme Court followed the *Holmes* case in the *Gravitt* case in holding that the statutory violation was not negligence per se; and stated that proof of the statutory violation without any other evidence authorizing a finding of negligence, would not render the railroad liable (p. 409).

The *Gravitt* case held also, in Division 6 (p. 409), that the failure to obey the statute, when a part of the *res gestae,* is admissible in evidence and may be considered by the jury in passing upon the question whether the defendant was negligent relative to the person injured. The court cited several earlier cases so holding; some of these were full-bench decisions and some not.

It is true the language of the *Holmes* opinion is broad: " . . . the accident having occurred elsewhere [than at a public crossing], the provisions of this act [blow-post law] are not applicable." But it is obvious that the *Gravitt* opinion interprets the *Holmes* case as having decided only that the statutory violation was not negligence *per se,* and that it interprets the *Holmes* case as having not decided that the statutory violation was not relevant as evidence of negligence. The *Gravitt* decision was by a full bench of five Justices. This court cannot rule against it either as to the meaning of the *Holmes* case or as to the relevance of a statutory violation in a transaction in which the injured party was not one within the intended protection of the statute.

*Motion for rehearing denied. Felton, C. J., and Bell, J., concur.*